IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| OLD STANDARD LIFE INSURANCE COMPANY IN REHABILITATION, GARY SMITH, Director of the State of Idaho Department of Insurance, in his capacity as Rehabilitator of Old Standard Life Insurance Company in Rehabilitation, OLD WEST ANNUITY & LIFE INSURANCE COMPANY IN REHABILITATION, and CHRISTINA URIAS, Director of the State of Arizona Department of Insurance in her capacity as Receiver of Old West Annuity & Life Insurance Company in Rehabilitation, | |
| Plaintiffs, | ORDER ON ALL PENDING MOTIONS |
| vs. | |
| DUCKHUNT FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership, | Case No. 2:05-CV-00536 PGC |
| Defendants. | |
| DUCKHUNT FAMILY LIMITED PARTNERSHIP, a Nevada limited partnership, | |
| Counter-plaintiff, | |
| vs. | |

| OLD STANDARD LIFE INSURANCE COMPANY IN REHABILITATION, GARY SMITH, Director of the State of Idaho Department of Insurance, in his capacity as Rehabilitator of Old Standard Life Insurance Company in Rehabilitation, OLD WEST ANNUITY & LIFE INSURANCE COMPANY IN REHABILITATION, and CHRISTINA URIAS, Director of the State of Arizona Department of Insurance in her capacity as Receiver of Old West Annuity & Life Insurance Company in Rehabilitation,, |  |
|---|---|
| Counter-defendants. |  |
| and AMERICA WEST TITLE AGENCY, INC., a Utah Corporation, LAWYERS TITLE INSURANCE CORPORATION, a Virginia Corporation, and JOHN DOES 1-5 |  |
| Third-party defendants. |  |

This case involves the priority of certain liens on property now involved in a bankruptcy proceeding. Plaintiff Old Standard Insurance Company is currently a life insurance company undergoing rehabilitation proceedings in the state of Idaho. It brought an action against defendant Duckhunt Family Limited Partnership to secure its lien position over certain proceeds of a real estate sale. Duckhunt filed its counterclaims against the Rehabilitator of Old Standard and other named defendants. Both Old Standard and Duckhunt have filed competing motions regarding their claims against each other. After careful consideration, the court DENIES Old Standard's motions to dismiss, remand or stay Duckhunt's Eleventh and Thirteenth causes of action [#24]. Because the court denies Old Standard's motions, the court also DENIES AS

MOOT Duckhunt's motion for partial summary judgment and/or declaratory relief [#34].

## PROCEDURAL BACKGROUND

Plaintiff Old Standard Life Insurance Company in Rehabilitation, along with other co-plaintiffs, filed the complaint under diversity jurisdiction to determine the validity and priority of certain trust deeds and liens on real property in Park City, Utah.  Old Standard also seeks an order enjoining defendant Duckhunt from taking certain actions in relation to the trust deed.  It also seeks judgment from the court that it is in a first lien position with respect to the trust deed properties, as well as a further judgment that an interest rate Duckhunt allegedly negotiated with the previous owner of the real property in Park City is unconscionable and unenforceable.

Duckhunt, in turn, has filed an Answer, Counterclaim, and Third-party Complaint. Duckhunt denies most of Old Standard's allegations and presents its own claims for relief. Duckhunt asserts several claims against Old Standard, including a 42 U.S.C. § 1983 claim for alleged violations of due process and a request for declaratory relief against Old Standard, the Rehabilitator Gary Smith, and the other named plaintiffs.  Duckhunt also complains that it should not be subject to the Rehabilitation Orders filed in Idaho state court relating to Old Standard's rehabilitation.

On October 28, 2005, Old Standard filed the pending motion to dismiss, remand or stay the 11th and 13th claims for relief on Duckhunt's counterclaim [#24].  Old Standard claims that *Younger v. Harris*[1] and/or *Burford v. Sun Oil Co.*[2] requires this court to dismiss, remand or stay

---

[1] 404 U.S. 37 (1971).

[2] 319 U.S. 515 (1943).

Duckhunt's declaratory relief and § 1983 claims. It also sought dismissal of Duckhunt's § 1983 claim based on the absolute immunity provided to the Rehabilitator's enforcement of the Idaho state court Rehabilitation Orders.

Duckhunt opposed Old Standard's motion and also filed a motion for partial summary judgment and/or declaratory relief [#34]. Duckhunt contends that *Younger* and *Burford* abstention principles do not apply to its counterclaims and that the Rehabilitator should not be accorded absolute immunity. Duckhunt moves for partial summary judgment and/or declaratory relief from the court for an order that it is not bound by the Idaho state court rehabilitation orders because the Rehabilitator obtained these orders *ex parte* and because Duckhunt is not subject to personal jurisdiction in Idaho. Additionally, Duckhunt contends that the rehabilitation orders have not been domesticated in Utah, and that binding Duckhunt to these rehabilitation orders violates its procedural and substantive due process rights. Both motions are now fully briefed.

On January 30, 2006, the court held a hearing on these motions. At the hearing, the court *sua sponte* raised the issue of whether the currently pending bankruptcy of Wasatch Mountain Properties, the owner of the Park City real property that has its trust deeds at issue in this action, stayed further proceedings in this court. The court requested further briefs from both sides on the bankruptcy proceedings' effect and requested counsel also to join the bankruptcy trustee as a party to these proceedings. The court is now in a position to rule on the pending motions.

## FACTUAL BACKGROUND

Solely for the purpose of resolving these competing motions, the court finds the following facts: In the fall of 2001, John Benson, either a contractor or developer, attempted to purchase or

complete construction on the Timber Wolf Property before the beginning of the 2002 Winter Olympics.  He bought certain properties as part of the overall project to build the Timber Wolf Lodge Condominium.  In order to finance his projects, he procured two construction loans totaling $3 million dollars from two trusts, the Pontious and Willkinson trusts.  On October 16, 2001, Mr. Benson secured those loan obligations with two trust deeds, recorded against properties Mr. Benson has already purchased (known for this litigation as the 5-8-12 Properties).

Mr. Benson also requested a loan from Duckhunt for $300,000 for further construction projects.  According to Duckhunt and the documents submitted on its behalf, Mr. Benson represented that the short term loan would be for sixty days, and that it would accrue interest at the rate of fifty percent per annum.  Duckhunt accepted and loaned the money at the extraordinarily high interest rate..

On October 19, 2001, Duckhunt received a promissory note from Mr. Benson in the principal amount of $300,000.  Mr. Benson secured the note by a lien, referred to as the "Duckhunt Trust Deed," granted on eleven condominium units located at Timber Wolf Property (the same 5-8-12 Properties).  Mr. Benson signed this deed and recorded it with the Summit County Recorder a few weeks later.  Old Standard alleges that the Duckhunt Trust Deed was in a third lien position junior to the existing Pontious/Wilkinson trust deeds securing Mr. Benson's obligations of $3 million to those trusts.

After this point, allegations of fraud and forgery enter the picture.  On January 23, 2002, Mr. Benson obtained refinancing for the Timber Wolf Properties of more than $3 million dollars from MetWest Mortgage Services.  MetWest sought and obtained a lender's policy insuring its

loan to Mr. Benson.  The $3 million dollar obligation was to be secured on the 5-8-12 Properties,

and MetWest agreed to advance this financing only if it secured a first lien position on these

properties.  America West Title, the title insurer conducting the closing of the financing, caused

more than $3 million dollars to be paid out for liens against Timber Wolf Property, none of

which Duckhunt ever received for its own note.  On January 23, 2002, America West Title

prepared a substitution of trustee for the Duckhunt Trust Deed, naming America West as

Successor Trustee for the Duckhunt Trust Deed.  Duckhunt duly signed this substitution of

trustee.  The Duckhunt Trust Deed also continued to be recorded on these properties in Summit

County.

Mr. Benson then requested Duckhunt to take a substitution of collateral on units in

Timber Wolf Property so that he could obtain a release of Duckhunt's Trust Deed.  He asked

America West to notarize a second trust deed reflecting his request.  Duckhunt states that it was

never informed about the substitution of this second trust and alleges they did not agree to it.

Despite Mr. Benson's signing of this second trust deed for Duckhunt, he did not have it recorded

at that time.  He also pledged these same condominium units, Units 7A,7B and 7C of the Timber

Wolf Properties listed in the second trust deed to Duckhunt, to MetWest as collateral for other

loans.  In short, it appears that Mr. Benson attempted to collateralize the same assets for a

number of different loans to different lenders.  Old Standard and Old West Annuity & Life

Insurance Company in Rehabilitation, two of the plaintiffs in the instant litigation, were then

assigned the notes for MetWest's recorded trust deeds on the Timber Wolf Properties.

At some point in this process, even though Mr. Benson pledged these same units as

collateral to MetWest in exchange for more financing, another unknown entity had that second trust deed for Duckhunt recorded with the Summit County Recorder.  In the process, some unknown entity requested Duckhunt to release the original Duckhunt Trust Deed (on the 5-8-12 Timber Wolf Properties).  Duckhunt refused to release this original deed because it had not received full payment.  An unknown entity then requested Duckhunt to subordinate the original Duckhunt Trust Deed, and America West prepared and forwarded a copy of that subordination agreement to Duckhunt.  Duckhunt alleges that it refused to execute this proposed subordination agreement.  Subsequent to these events, another unknown entity then caused the Deed of Reconveyance (conveying the original Duckhunt Trust Deed back America West) to be recorded by the Summit County Recorder.  Although America West's president's signature is on this Deed of Reconveyance, he has represented that he does not believe he ever signed that document. Duckhunt alleges that it does not contain his signature and, indeed, that the signature by America West's president is a forgery.  Also, Duckhunt alleges that they never sent written notice to America West that they intended to release or reconvey the Duckhunt Trust Deed, a requirement of Utah law.

During these events, Mr. Benson transferred Timber Wolf Property to Wasatch Mountain Properties, LLC, which then filed for Chapter 11 bankruptcy in October 2003.  The bankruptcy proceeding later converted to a Chapter 7 bankruptcy.  One year later, the bankruptcy trustee sought permission to sell Timber Wolf Property free and clear of liens.  While preparing for those proceedings, Duckhunt found that the forged Deed of Reconveyance had been recorded with the Summit County Recorder and that the original Duckhunt Trust Deed was no longer

legally recognized.  Duckhunt then recorded a Corrective Affidavit indicating that the Deed of

Reconveyance was unauthorized, erroneous and improper, and should be disregarded, all

pursuant to Utah Code Ann. § 57-1-33.1(3).

Meanwhile, in Idaho, the Fourth Judicial District Court in Ada County, Idaho, instituted

rehabilitation procedures for Old Standard.  On March 2, 2004, pursuant to Idaho Code, the

Idaho state court issued an order of rehabilitation appointing the Director for the Idaho

Department of Insurance as Old Standard's Rehabilitator.  The order tasked the Director with

"tak[ing] possession of the assets of Old Standard and administer[ing] the assets under the

general supervision of the court."[3]  By operation of law, the order vested title to all of Old

Standard's assets with the Rehabilitator, and stated that the Director would have all the powers

and duties of a rehabilitator under Idaho Code, including everything spelled out in Idaho Code §

41-3314.  Accordingly, the Rehabilitator "may take such action as he deems necessary or

appropriate to reform and revitalize the insurer.  He shall have all the powers of the directors,

officers, and managers, . . . full power to direct and manage, . . . and to deal with the property and

business of the insurer."[4]

Nine months later, on December 14, 2004, the Idaho state court issued an Amended

Order, which detailed more of the duties, powers, and responsibilities of Old Standard's

---

[3] Old Standard Memo. In Support of Mot. To Dismiss, Remand or Stay the 11th and 13th
Claims for Relief of Defendant's Counterclaim, No. 25, Ex. A, at 2 (D. Utah Oct. 28, 2005)
[hereinafter Order of Rehabilitation].

[4] Idaho Code Ann. § 41-3314(2).

Rehabilitator.[5]  That court granted the Rehabilitator "all powers, rights and privileges provided in [Idaho Code § 41-3315]," and urged the Rehabilitator to "petition courts having jurisdiction over [all litigation pending outside the state] for stays wherever necessary to protect the rehabilitation of Old Standard."[6]  More important, the Idaho court "authorized [the Rehabilitator] to sue or defend on behalf of Old Standard, or to do so in the interest of Old Standard's policyholders, creditors, shareholder[s] and the public in the courts, tribunals, agencies or governmental bodies of this state and any other state, and to take such actions as the interests of the policyholders, creditors and the public may require."[7]  And that court

> [E]njoined and restrained [all persons and entities] from (1) instituting or further prosecuting any action, at law or in equity, or in other proceedings to determine, enforce, collect, or asse[ss] any claims or causes of action against Old Standard or the Rehabilitator; (2) asserting or obtaining, or attempting to assert and/or obtain, any . . . liens or encumbrances recoverable . . . against Old Standard, the rehabilitation estate of Old Standard or the Rehabilitator; (3) taking any action or interfering in any way with the Rehabilitator's title, possession, and/or control of Old Standard and the rehabilitation estate of Old Standard; (4) taking any action or making any claim that may lessen or diminish the value of Old Standard and the Old Standard rehabilitation estate or prejudicing the rights of Old Standard's policyholders, creditors and the public. . . .[8]

Finally, pursuant to the Amended Order and Idaho Code Ann. § 41-3305, the Idaho court stated:

> [T]the Rehabilitator may require that any claim or cause of action asserted against Old Standard, the rehabilitation estate of Old Standard or the Rehabilitator must be raised or asserted in [these] rehabilitation proceedings before this Court, and in such instance, all persons or entities are hereby enjoined and restrained from asserting such claim or cause

---

[5] Old Standard Memo. In Support of Mot. To Dismiss, No. 25, Ex. B (D. Utah Oct. 28, 2005) [hereinafter Amended Order of Rehabilitation].

[6] Amended Order of Rehabilitation, at 4.

[7] *Id*.

[8] *Id*.

of action against Old Standard, the rehabilitation estate of Old Standard or the
Rehabilitator except as such claim or cause of action is brought in the rehabilitation
proceedings before this Court.[9]

Armed with this Amended Order, Old Standard brought the current action to this court.

Specifically, Old Standard sought "a decree in equity restoring [its] liens and declaring [the

Rehabilitator] the assignee of those liens."[10]  It sought payment for Duckhunt's unjust

enrichment, an order reforming the previous transactions to ensure that Duckhunt did not receive

unjust enrichment, enjoinment of Duckhunt's attempt to repudiate its previous statements, and a

declaration that Old Standard's trust deeds stand in a first lien position with respect to the 5-8-12

Timber Wolf Properties.  In response to Old Standard's complaint, Duckhunt filed both its

Answer and Counterclaim.  Old Standard then filed its motion to dismiss, remand or stay

proceedings on Duckhunt's 11th and 13th claims [#24], arguing that the court must abstain,

remand or stay Duckhunt's claims.  It also argued that Old Standard should be accorded absolute

immunity because the Rehabilitator is merely fulfilling the Idaho state court's orders.  Duckhunt

also filed its motion for partial summary judgment on the issue of whether Duckhunt is bound by

the Amended Order of Rehabilitation and whether Old Standard violated Duckhunt's due process

rights by bringing these actions [#34].

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the court "must accept as true all of the factual

---

[9] *Id*. at 5.

[10] Complaint, at ¶ 50.

allegations contained in the complaint."[11]  "All well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party."[12] Dismissal of a complaint is only proper if "it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."[13]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[14]  The court must view the evidence, and draw reasonable inferences from that evidence, in the light most favorable to the nonmoving party.[15]  The nonmoving party may not, however, "rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing there is a genuine issue for trial."[16]  "The mere existence of a scintilla of evidence in support of the [non moving party's] position will be insufficient [to overcome summary judgment]; there must be evidence on which the jury could reasonably find for [the non-moving party]."[17]

---

[11] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)).

[12] *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quotations omitted).

[13] *Id*. (quotations omitted).

[14] Fed. R. Civ. P. Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005).

[15] *Cummings*, 393 F.3d at 1189; *Spaulding v. United States*, 279 F.3d 901, 904 (10th Cir. 2002).

[16] *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).

[17] *Id*. at 252.

**DISCUSSION**

The court has before it two competing motions; Old Standard seeks to dismiss, remand or stay part of Duckhunt's counterclaims, and Duckhunt seeks summary judgment and/or declaratory judgment on part of its counterclaims.  Old Standard believes that the court should not be involved in adjudicating Duckhunt's counterclaims and seeks abstention under *Younger* or *Burford* abstention principles.  In contrast, Duckhunt believes that its counterclaims are so persuasive that it is entitled to a declaration by the court that it should not be bound by the Idaho Rehabilitation Orders.  Or, in the alternative, Duckhunt believes the court should grant summary judgment on its claims that application of the Idaho Rehabilitation Orders to its claims is a clear violation of its constitutional rights.  A decision by the court on Old Standard's motion to dismiss, remand or stay Duckhunt's counterclaims will effectively decide these competing motions.

> *A. Old Standard's Motion to Dismiss, Remand or Stay Duckhunt's Eleventh and Thirteenth claims [#24]*

A review of Old Standard's complaint is in order at this point.  Old Standard seeks "equitable, declaratory, and other relief with respect to the parties' respective interests in real property located in Summit County."  Old Standard's allegations discuss the acquisition by Mr. Benson, the respective lien positions of the parties, and the subsequent Chapter 11 (now Chapter 7) bankruptcy in federal court.  In light of these facts, Old Standard seeks to subordinate the position of Duckhunt's lien on the now-foreclosed property, to "reform[] the transaction [between Duckhunt and Mr. Benson] so that Duckhunt does not mistakenly receive the unintended benefit," and to preclude Duckhunt "from repudiating its statement that it would

subordinate" its Trust Deed.  Additionally, Old Standard requests this court enter "an order declaring that the Corrective Affidavit that Duckhunt recorded in December 2004 [in front of the Bankruptcy Trustee during a bankruptcy proceeding] is null and void . . . as a violation of the automatic stay imposed by 11 U.S.C. § 362(a)(4) and (5)."

Duckhunt responds in its answer and counterclaim that it never executed the proposed subordination agreement nor agreed that the original Duckhunt Trust Deed could be released.  It did not authorize any Deed of Reconveyance for the 5-8-12 Timber Wolf Properties, and subsequently discovered the fraudulent or forged Deed of Reconveyance pursuant to the Wasatch Mountain Properties bankruptcy.  Duckhunt then recorded the Corrective Affidavit pursuant to Utah Code Ann. § 57-1-33.1(3) in order to preserve its lien position on the bankruptcy sale proceeds.  Duckhunt argues that it never received notice of the Rehabilitation Order and the Amended Order, as the order was never served by the Rehabilitator upon Duckhunt or any other party.  Duckhunt further notes that the order has not been filed or domesticated in Utah under Utah Code Ann. § 31A-27-401.  In light of these facts, Duckhunt brings various counterclaims against Old Standard, including claims for declaratory relief on the unpaid balance of the original Duckhunt Trust Deed note, validity of its Corrective Affidavit, and slander of title.  It also brings actions specifically against Old Standard, including declaratory relief that the Rehabilitation Orders have not been domesticated in Utah and do not apply to Duckhunt.  Duckhunt also alleges that Old Standard acted under color of state law to deprive Duckhunt of due process and equal protection under the Fifth and Fourteenth Amendments, constitutional violations that are actionable under 42 U.S.C. § 1983.

In response, Old Standard moved to dismiss Duckhunt's declaratory relief and § 1983 claims, respectively the Eleventh and Thirteenth claims of Duckhunt's Answer and Counterclaim [#24]. Old Standard argues that the McCarran-Ferguson Act[18] requires state regulation of the business of insurance and that the Idaho state court's orders specifically require any actions against Old Standard to be brought in Idaho state court. Accordingly, under *Younger* and *Burford* abstention principles, Old Standard argues that the court should dismiss, remand to Idaho, or stay Duckhunt's counterclaims against it. Old Standard further argues that the Rehabilitator should be accorded absolute immunity on the § 1983 claims because he carried out his actions in this court only at the behest of the Idaho state court and its Rehabilitation Orders. Duckhunt argues that *Younger* and *Burford* abstention principles do not apply, that it is not subject to personal jurisdiction in Idaho, that the Rehabilitation Orders have not been domesticated in Utah, and that Old Standard's adherence to the Rehabilitation Orders violates Duckhunt's due process rights and equal protection under the law.

Before turning to the motion to dismiss, it is important to note that the bankruptcy stay in place for Wastach Mountain Properties does not bar action by this court. The court is well aware that a "petition filed [for bankruptcy] operates as a stay, applicable to *all entities,* [against]. . .any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . .[or] any act to create, perfect, or enforce any lien against property of the estate."[19] Both parties have informed the court, however, that the bankruptcy stay

---

[18] 15 U.S.C. §§ 1011 *et seq*.

[19] 11 U.S.C. § 362(a)(3)-(4) (emphasis added).

on these issues has been lifted and, therefore, there is no bar to moving forward.  Additionally,

Duckhunt has informed the court that it and the Chapter 7 Trustee for Wasatch Mountain

Properties have stipulated to consolidation of their adversary proceeding captioned *Rushton v.*

*Duckhunt Family Limited Partnership (In re Wasatch Mountain Properties)*[20] with this case.

Turning to the various motions, Old Standard first argues that the Idaho state court

Rehabilitation Orders preclude this court from taking any subsequent action on Duckhunt's

counterclaims.  Old Standard argues that the McCarran-Ferguson Act precludes any

congressional action in the insurance business, thereby leaving this area in the capable hands of

state regulation.  Due to the Idaho state court Rehabilitation Orders, Old Standard argues that its

rehabilitation proceedings are ongoing state judicial proceedings, and that *Younger* and *Burford*

abstention principles apply.  Because the Idaho state courts are supposed to regulate the business

of insurance and because any claim brought against Old Standard has to do with the state

rehabilitation process, then Old Standard believes all of Duckhunt's counterclaims against it

should be dismissed, remanded to Idaho or stayed.

"Congress has disavowed any significant and overriding federal interest in insurance

insolvencies, exempting insolvent insurers from the protection of federal bankruptcy laws."[21]

The McCarran-Ferguson Act, passed  in 1945,[22] "includes an express reverse preemption

---

[20] Bankr. Adv. P. No. 05-02659 (Bankr. D. Utah).

[21] *Hawthorne Sav. F.S.B. v. Reliance Ins. Co.*, 421 F.3d 835, 841 (9th Cir. 2005).

[22] 15 U.S.C. §§ 1011 *et seq*.; *see also Idaho ex rel. Soward v. United States*, 858 F.2d 445, 449-50 (9th Cir. 1988) (offering an excellent explanation of the state of insurance regulation by the federal government before and after the Act).

provision, [providing] that no Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance."[23] It is therefore clear that no federal preemption of insurance regulation exists, as Congress intended such regulation to be carried out solely by the states.[24]

While generally bankrupt businesses would take advantage of federal bankruptcy rules, "Congress has excluded insurance companies from the provisions of the federal bankruptcy laws."[25]  Failed or liquidated insurance companies must be regulated by the states, and states therefore create regulations for these companies that are conducted under state law.[26]  Idaho has enacted Chapter 33 of the Idaho Code, regulating the supervision, rehabilitation, and liquidation proceedings for insurers within that state.[27]  This statute sets out the powers and obligations of insurers, as well as setting out the authority and obligations of insurers that are in the process of rehabilitation proceedings.  Chapter 33 gives a rehabilitator a significant appointment, including the task to

---

[23] *Id*. at 842.

[24] *See U.S. Dep't of the Treasury v. Fabe*, 508 U.S. 491, 500 (1993) (affirming the "supremacy of the States in the realm of insurance regulation"); *see also Munich American Reinsurance Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998) ("Ordinarily federal law pre-empts conflicting state law by virtue of the Supremacy Clause. . . . The McCarran-Ferguson Act reverses that effect in the narrow range of cases involving state regulation of the insurance industry.").

[25] *Soward*, 858 F.2d at 450.

[26] *Id*.; *see also Clark v. Willard*, 292 U.S. 112, 123 (1934) (noting the proper procedures and rules for "dismemberment" of insurance companies "is a question as to which the Supreme Court of [each] state will speak with ultimate authority").

[27] Idaho Code Ann. §§ 41-3301 *et seq*.

> Apply [to] any court of general jurisdiction . . . [for] such restraining orders, preliminary and permanent injunctions, and other orders as may be deemed necessary and proper to prevent . . . [t]he transfer of property; . . . [i]nterference with the receiver or with a proceeding . . .; [t]he institution or further prosecution of any actions or proceedings; [or] [t]he obtaining of preferences, judgments, attachments, garnishments, or liens against the insurer, its assets, or its policyholders.[28]

According to this statute, a rehabilitator may apply to any court for certain restraining orders that prohibit bringing actions against it in any court but Idaho, or to restrain parties from obtaining preferences against the assets of the insurer.

Because the business of insurance is generally a state regulatory matter, the proceedings for an insurance company's liquidation or rehabilitation are conducted in state court. Old Standard argues that these proceedings are ongoing until the insurance company is out of rehabilitation or has been liquidated. Due to the ongoing state proceedings, any action brought against Old Standard must be brought in the state court or will interfere with a pending state judicial proceeding.[29] *Younger* abstention requires "a proper respect for state functions"[30] and applies to a request for "declaratory judgment [because that] result[s] in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid."[31] The Supreme Court in *Middlesex County Ethics Committee v. Garden State Bar Association* applied *Younger* abstention to state civil

---

[28] *Id*. §§ 41-3305(1)(b),(c),(f) and (g).

[29] *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 431 (1982) ("*Younger v. Harris* [] and its progeny espouse a strong federal policy against interference with pending state judicial proceedings absent extraordinary circumstances.").

[30] *Younger*, 401 U.S. at 44.

[31] *Samuels v. Mackell*, 401 U.S. 66, 72 (1971).

proceedings, requiring the court to determine whether (1) the state proceedings at issue constitute an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) there was an adequate opportunity in the state proceedings to raise constitutional challenges.[32] The Tenth Circuit has held that "*Younger* abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances."[33]

 The counterclaims brought by Duckhunt, however, do not implicate these concerns. This is not a case where Duckhunt has sought to avail itself of a federal forum, creating the risk that its actions would interfere with state rehabilitation proceedings. Instead, Old Standard itself sought to avail itself of a federal forum, and Duckhunt seeks only to present counterclaims closely connected to the claims originally asserted by Old Standard. If Old Standard's claims in this court did not interfere with the state rehabilitation, it is hard to understand how Duckhunt's counterclaims could be expected to do so. Moreover, the counterclaims brought by Duckhunt do not target Old Standard's rehabilitation proceedings. The Eleventh counterclaim requests declaratory judgment "that the foreign order has never been domesticated in Utah" or in the alternative that such domestication "violated Duckhunt's due process and equal protection guaranteed by the Fifth and Fourteenth Amendments." And the Thirteenth counterclaim essentially mirrors the Eleventh, alleging a 42 U.S.C. § 1983 claim pursuant to these same constitutional violations of due process and equal protection by Old Standard. The gist of

---

[32] *Middlesex County Ethics Comm.*, 457 U.S. at 432.

[33] *Amantullah v. Colorado Bd. of Medical Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999).

Duckhunt's Eleventh and Thirteenth counterclaims is that it has not been accorded procedural or

substantive due process, or equal protection of the law, especially because Old Standard as a

currently rehabilitating state actor has violated Duckhunt's constitutional rights by bringing its

action in this court and attempting to enforce the Rehabilitation Orders against it.  Therefore,

because these counterclaims do not interfere with any ongoing state judicial proceedings,

*Younger* abstention is not appropriate for these counterclaims.

Old Standard also argues that *Burford* abstention is appropriate on Duckhunt's Eleventh

and Thirteenth counterclaims.  The *Burford* abstention doctrine authorizes federal courts to

abstain from exercising jurisdiction over claims that "clearly involve basic problems of [state

policy so] that equitable discretion should be exercised to give the [state] courts the first

opportunity to consider them."[34]  State regulation of insurance matters has been recognized as

sufficient to invoke *Burford* abstention in some cases.[35]  In other cases, however, *Burford*

abstention was not appropriate even where insurance matters were arguably peripherally

involved.[36]  In "a number of . . . contexts, courts have examined the congressional purpose of the

---

[34] *Burford*, 319 U.S. at 332.

[35] *See, e.g., Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, (10th Cir. 1988); *Clark v. Fitzgibbons*, 105 F.2d 1049 (5th Cir. 1997).

[36] *See, e.g., Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 945-46 (8th Cir. 2006) (Insurance company's pricing practices product of unlawful race discrimination, and therefore enforcement of federal statutes may be permitted to impact state regulation of insurance); *Idaho ex rel. Soward v. United States*, 858 F.2d 445, 451, 455 (9th Cir. 1988) (holding the Federal Insolvency Act preempted Idaho insolvency statute establishing priority of claims; McCarran-Ferguson Act did not apply because the Idaho statute did not regulate the "business of insurance"); *Gordon v. United States Dep't of Treasury*, 846 F.2d 272, 273-74 (4th Cir. 1988) (federal government entitled to priority of payment in liquidation of insolvent insurance company; determination of priority did not constitute the "business of insurance" under the

McCarran-Ferguson Act and have concluded that the Act does not prevent the application of

various federal civil rights statutes to the business of insurance."[37]  Therefore, the "'presence of a

general regulatory scheme does not show that any particular state law would be invalidated,

impaired or superceded by the application of . . . the Civil Rights Acts.'"[38]  It appears that

Duckhunt's counterclaims do not sufficiently affect the "business of insurance" to be preempted

by the McCarran-Ferguson Act and that *Burford* abstention is therefore not appropriate.  The

Eleventh counterclaim – the declaratory judgment claim against Old Standard – implicates

Duckhunt's civil rights of due process, so this action is not appropriate for *Burford* abstention.

---

McCarran-Ferguson Act); *Mackey v. Nationwide Ins. Co.*, 724 F.2d 419, 421 (4th Cir. 1984) (disagreeing with the conclusion that the McCarran-Ferguson Act bars the plaintiff's claims under the Fair Housing Act and Civil Rights Act); *Phillips v. Lincoln Nat'l Health & Cas. Ins. Co.*, 774 F. Supp. 1297, 1300 (D. Colo. 1991) (holding that an insurer's liquidation under the Uniform Insurers Liquidation Act was not the "business of insurance" so arbitration under the Federal Arbitration Act did not affect the McCarran-Ferguson Act); *McDiarmid v. Economy Fire & Cas. Co.*, 604 F. Supp. 105, 108-109 (S.D. Ohio 1984) (interpretation of Fair Housing Act did not violate the McCarran-Ferguson Act); *EEOC v. Wooster Brush Co.*, 523 F. Supp. 1256, 1265-66 (N.D. Ohio 1981) ("Congress' failure to expressly state that Title VII applies to the business of insurance should not automatically shield that industry from the Act's prohibitions against racial, religious, alienage or sexual discrimination." (quotations omitted)); *Women in City Government United v. New York*, 515 F. Supp. 295, 303-04 (S.D.N.Y. 1981) (same); *Ben v. General Motors Acceptance Corp.*, 374 F. Supp. 1199, 1202-03 (D. Colo. 1974) ("There is no indication in the background and history of the McCarran[-Ferguson] Act or its application that [it] was intended to deprive a citizen of access to the Federal Court to obtain redress for violations of his civil rights and require him to resort to the state courts as the sole forum for redress.").

[37] *McDiarmid*, 604 F. Supp. at 108 (citing *Wooster Brusch Co.*, 523 F. Supp. 1256, *aff'd in part, rev'd in part*, 727 F.2d 566 (6th Cir. 1984) (McCarran-Ferguson Act inapplicable to Title VII); *Women in City Government United*, 515 F. Supp. 295 (same); *Ben*, 374 F. Supp. 1199 (McCarran-Ferguson Act does not bar claims under 42 U.S.C. § 1982 and 1985)).

[38] *Saunders*, 440 F.3d at 945 (quoting *Mackey v. Nationwide Ins.*, 724 F.2d 419, 421 (4th Cir. 1984)).

And the Thirteenth counterclaim – the § 1983 claims alleging due process and equal protection violations by a state actor – implicates the same civil rights claims that do not bear on the state regulatory regime for the business of insurance.[39]  Therefore, the court declines to dismiss, remand, or stay either of these counterclaims based *Burford* abstention principles.

Old Standard also argues in the alternative that the rehabilitator should be accorded "absolute quasi-judicial immunity" against Duckhunt's Thirteenth counterclaim (the § 1983 claim) because he was carrying out the orders of the Idaho state appointing judge.  Old Standard argues that the Tenth Circuit's decision in *T & W Investment Co. v. Kurtz*[40] requires any court-appointed receiver to be accorded absolute immunity.  It is clear, however, that the "absence of a . . . well developed and pervasive mechanism for controlling [rehabilitator] misconduct weighs against allowing absolute immunity for" the Rehabilitator.[41]  In *Kurtz*, the Tenth Circuit held that in "*these circumstances*, at least, the receiver is entitled to share the judge's immunity."[42]  The Tenth Circuit explicitly noted in *Kurtz* that "every action by [the receiver] . . . was known to and

---

[39] *See* cases cited in *supra* note 37.

[40] 588 F.2d 801 (10th Cir. 1978).

[41] *Malley v. Briggs*, 475 U.S. 334, 343 n.5 (1986); *see also Sebastian v. United States*, 531 F.2d 900, 903 n.6 (8th Cir. 1976) ("We do not hold that the unquestioning execution of a judicial directive may never provide a basis for liability against a state officer."); *Czikalla v. Malloy*, 649 F. Supp. 1212, 1214-15 (D. Colo. 1986) (holding that social workers acting pursuant to court order were not entitled to absolute immunity, because the Tenth Circuit's holding in *T & W Investment Co. v. Kurtz*, 588 F.2d 801 (10th Cir. 1978) "did not intend to immunize all persons acting pursuant to any judicial order whatsoever.").

[42] *Id*. at 803 (emphasis added).

approved by the state court judge supervising the receiver."[43]  Additionally, the entity bringing

the § 1983 suit "had an opportunity to and did object throughout the state court proceedings."[44]

Old Standard has failed to show any of the above conditions in *Kurtz* applicable to this case, so

absolute immunity appears inappropriate.

Even more important, Old Standard has forfeited any judicial immunity argument by

bringing broad claims for relief in this court, including claims for which Duckhunt raises its

compulsory counterclaims.  Fed. Rule of Civil Procedure 13(a) "requires a defendant to plead

any counterclaim which 'arises out of the transaction or occurrence that is the subject matter of

the opposing party's claim and does not require for its adjudication the presence of third parties

of whom the court cannot acquire jurisdiction.'"[45]  The existence of compulsory counterclaims is

powerful enough to waive the sovereign immunity of the United States.  In the bankruptcy

context, the government must plainly waive sovereign immunity from compulsory counterclaims

brought against governmental claims.[46]  Indeed, when "the state becomes the actor and files a

claim against the bankruptcy fund, it waives any immunity which it otherwise might have had

respecting the adjudication of the claim."[47]  The Eleventh and Thirteenth counterclaims arose out

---

[43] *Id.*

[44] *Id.*

[45] *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) (quoting Fed. R. Civ. P. 13(a)).

[46] 11 U.S.C. §§ 101(4)(A) and 106(a); *see United States v. Nordic Village*, 503 U.S. 30, 34-35 (1991); *Hoffman v. Conn. Dep't of Income Maintenance*, 492 U.S. 96, 112 (1989).

[47] *Wyoming DOT v. Straight*, 143 F.3d 1387, 1389-90 (10th Cir. 1998).

of the same transaction at issue in Old Standard's suit, and it is clear that Duckhunt would have

lost its ability to bring these claims if it had not brought them as counterclaims in this suit.

Given that the court finds Duckhunt's claims are compulsory counterclaims, the court also finds

that Old Standard waived any absolute immunity argument by initiating its suit in this court.

Given the above conclusions and case law, the court DENIES Old Standard's motions to dismiss,

to remand, or to stay Duckhunt's Eleventh and Thirteenth Claims [#24].

> *B. Duckhunt's Motion for Summary Judgment and/or Declaratory Relief* [#34]

Duckhunt also moves for partial summary judgment that it is not bound by the Amended

Order.  It seeks a judgment from the court that it did not have minimum contacts with the State of

Idaho to subject it to personal jurisdiction in that forum, that it never received any service of any

motion or summons in the Idaho proceedings, and that it was never presented notice of the

Amended Order.  In the alternative, Duckhunt argues that if it is bound by the Amended Order,

then Old Standard has violated Duckhunt's procedural and substantive due process rights under

the Fifth and Fourteenth Amendments.

Old Standard initiated its action against Duckhunt in this forum and decided not to seek

relief from Idaho state courts.  It is clear, therefore, that any counterclaims dealing with the

allegations laid out in this suit would also be appropriate for a decision by this court.  In its suit

in this court, Old Standard seeks a priority lien position and proceeds to certain real estate in Park

City.  Having sought that relief, it cannot then turn around and argue that Duckhunt, the target of

Old Standard's suit, must seek relief from the Idaho courts regarding the very same liens and

proceeds.  Moreover, such a requirement for separate suits might possibly lead to inconsistent

judgments by both courts or other confusing results.  Once Old Standard opened the door by

suing in this court, it waived any right to the protections of the Idaho Rehabilitation Orders with

respect to the subject matter currently pending before the court.

In light of the court's earlier rulings denying Old Standard's motion to dismiss, however,

there appears no reason to grant Duckhunt's motion for partial summary judgment and/or

declaratory relief.  The court assumes jurisdiction over these claims by Old Standard and

counterclaims by Duckhunt, and therefore Duckhunt's motion for partial summary judgment

and/or declaratory relief is moot.  The court DENIES AS MOOT Duckhunt's motion for partial

summary judgment and/or declaratory relief [#34].

*C. Duckhunt's motion for default judgment* [#18]

Duckhunt also filed a motion for default judgment as to third-party defendant America

West [#18].  On the same day, Duckhunt filed a "Motion for Entry of Default as to America

West Title Agency," but the image attached on the docket was not the proper image and was

deleted.  The court's docket, however, continues to have both the "Motion for Entry of Default as

to America West" and the "Motion for Default Judgment as to defendant(s) America West Title

Agency" [#18].  Absent any objections from the parties, the court will construe the two motions

as the same, and will DENY as moot the "Motion for Entry of Default."  The Clerk's Office has

already issued the Entry of Default Certificate as to America West [#27].  It is not clear to the

court what further relief is requested, as Duckhunt has already received the Entry of Default

Certificate.

**CONCLUSION**

The court DENIES Old Standard's motions to dismiss, remand, or stay Duckhunt's 11th and 13th counterclaims [#24].  Because the court denies Old Standard's motions, the court DENIES AS MOOT Duckhunt's motion for partial summary judgment and/or declaratory relief [#34].

The court construes both the "Motion for Entry of Default as to America West Title Agency" and Motion for Default Judgment as to America West Title Agency" [#18] as the same motion.  The court DENIES as moot the "Motion for Default Judgment as to America West Title Agency" [#18], and requests the Clerk's Office to enter both of these motions as denied on the docket.

SO ORDERED.

DATED this 2nd day of June, 2006.

BY THE COURT:

_____

Paul G. Cassell
United States District Judge